**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No.

GONZALO MIRANDA HERRERA

    Plaintiff,

v.

RING & RING, INC., d/b/a WRIGHT'S AMUSEMENTS

    Defendant.

## COMPLAINT

Plaintiff, Gonzalo Miranda Herrera, by and through counsel, brings this action against his former employer, Ring & Ring, Inc. "Defendant," and alleges as follows:

### PRELIMINARY STATEMENT

1. This is a civil action for damages brought by Mr. Miranda Herrera to enforce contractual and statutory rights guaranteed by Colorado and federal law to the payment of full wages, including full overtime compensation for all hours worked and for other damages arising out of his employment as a carnival worker for Defendant, in Colorado, in 2018.

2. Mr. Miranda Herrera, a Mexican National, was employed by Defendant Ring & Ring, Inc. pursuant to the federal H-2B temporary non-agricultural worker visa program, which allows employers in the United States to hire foreign workers subject to specified minimum terms and conditions of employment established by the United States Department of Labor ("USDOL").

3. Mr. Miranda Herrera was recruited to come to the United States under false pretenses, and once here, was required to work extreme hours for unlawfully low compensation, under abusive working conditions.

4. Mr. Miranda Herrera seeks to recover his unpaid wages, actual, liquidated, and compensatory damages, and, to the extent appropriate, pre-and post-judgement interest. He also seeks reasonable attorney fees.

5. Mr. Miranda Herrera, therefore, brings this action to recover damages for injuries inflicted by Defendant under the Fair Labor Standards Act ("FLSA") , 29 U. S. C. § 216(b); the Trafficking Victims Protection Reauthorization Act of 2003 (hereinafter "TVPRA"), 22 U.S.C. § 7171, 18 U.S.C. § 1589 and§ 1590; the Colorado Wage Act, Colo. Rev. Stat. § 8-4-101, *et seq*.; Colorado Minimum Wage of Workers Act, Colo. Rev. Stat. §8-6-101, *et seq.* and breach of contract and unjust enrichment.

## JURISDICTION AND VENUE

6. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (federal question), 1337; 29 U.S.C. § 216 (FLSA), and 18 U.S.C. §1595 (TVPRA), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Mr. Miranda Herrera's related claims under Colorado law.

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 since Plaintiffs' state claims arise out of the laws of the United States, including claims pursuant to the FLSA and the TVPRA.

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 since the construction of the terms of contracts for employment of temporary foreign non-agricultural workers pursuant to the federal H-2B program arises under the laws of the United States.

9. This Court has jurisdiction over federal claims herein pursuant to 28 U.S.C. § 1337 relating to acts of Congress regulating commerce.

10. This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to the FLSA, which provides that "[a]n action to recover ... may be maintained ... in any Federal or State court of competent jurisdiction," 29 U. S. C. § 216(b).

11. This Court has jurisdiction over Plaintiff's TVPRA claims pursuant to the TVPRA, which provides that a victim may bring a civil action in "an appropriate district court of the United States," 18 U.S.C. §1595(a).

12. This Court has supplemental jurisdiction over Plaintiffs' state law and common law claims under 28 U.S.C. § 1367 because those claims arise out of the same operative facts as the claims arising under federal law and are so related to those claims that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

13. Defendant is incorporated and actively conducting business in Colorado and therefore subject to this Court's personal jurisdiction.

14. Venue is proper pursuant to 28 U.S.C. § 1391. All of the events or omissions giving rise to Mr. Miranda Herrera's claims occurred in the District of Colorado.

## PARTIES

15. Mr. Miranda Herrera is a Mexican citizen domiciled in Colorado.

16. From approximately March 2018 until July 2018, Mr. Miranda Herrera was employed as a carnival worker for Defendant in the United States.

17. Defendant, Ring & Ring, Inc. is a traveling carnival company located in Ebert, Colorado and incorporated in the State of Colorado.

18. At all times relevant to this action, Ring & Ring, Inc. employed Mr. Miranda Herrera to set up and take down carnival games and rides, work as a ride operator, serve food, collect tickets, and engage in other tasks necessary to operate a traveling carnival.

19. Ring & Ring, Inc., d/b/a Wright's Amusements, a trade name filed with the Colorado Secretary of State, was his employer within the meaning of 29 U.S.C. § 203(d) and Colo. Rev. Stat. § 8-4-101.

## STATEMENT OF FACTS

### The H-2B Program

20. The H-2B Temporary Non-Agricultural Worker visa program ("H-2B Program") is a program that provides non-immigrant temporary worker visas to employers in the United States seeking to hire non-immigrant foreign workers to come to the United States and perform temporary or seasonal work in circumstances where qualified domestic workers are not available.

21. Visas issued under the H-2B program are issued to the prospective workers with the employer as the "sponsor" of that worker and limit employment of the H-2B worker to the employer who petitions for their visas.

22. An employer or their agent must coordinate with several government agencies, the workers, and a foreign consulate in order to hire workers through the H2-B program.

23. An employer must follow the following steps to obtain H-2B workers:

a. Apply for and obtain a minimum "prevailing wage determination" from USDOL based on information that the employer provides regarding factors like the geographic area of the work, education and skill level required, and tasks to be performed.

b. Advertise the availability of the position to US workers.

      c.      Apply for and obtain a "temporary labor certification" from the USDOL using the USDOL Employment and Training Administration (ETA) Form ETA-9142B, which requires assurances signed by the employer under penalty of perjury as to the minimum terms and conditions on which employment will be offered by the employer on USDOL Form ETA9142B Appendix B.

      d.      File the temporary labor certification with information about the employer and prospective workers with the Department of Homeland Security (DHS) United States Citizenship and Immigration Service (USCIS).

      e.      Designate the country where the employer will obtain foreign workers.

      f.      Identify which individual foreign workers the employer seeks to employ.

      g.      Make arrangements, including scheduled interviews, for processing each of those workers through the United States Department of State consular offices in that country.

24.      On Form ETA-9142B Appendix B, the employer certifies under penalty of perjury that, among other things, the offered wage equals or exceeds the highest of the most recent prevailing wage or the applicable Federal, State or local minimum wage; that the employer will pay the offered wage; and that the employer will comply with applicable Federal, State and local employment-related laws and regulations.

### Mr. Miranda Herrera's H-2B Visa and Contract with Defendant

25.      Upon information and belief, Defendant owns and operates a year-round traveling carnival that sets up in malls in cities and towns and at festivals and special events throughout Colorado, New Mexico, Arkansas, and Texas all twelve months of the year.

26.      On December 15, 2017, the USDOL granted temporary employment certification to Defendant to employ sixty foreign national workers as amusement and recreation attendants to

assist in operating the carnival for the portion of the year between February 15, 2018 and November 11, 2018.

27.     Defendant applied for and received H-2B visas to hire Mr. Miranda Herrera and other foreign workers as ride operators, food servers, game attendants, and ticket collectors at its carnivals.

28.     In order to participate in the H-2B visa program, an employer is required each year to obtain a "prevailing wage determination" from USDOL establishing the minimum wage rate that the employer is permitted to offer to H-2B workers and to corresponding domestic workers based on the type of work to be performed by the workers.

29.     Defendant's H-2B application for temporary employment certification states the recreation attendants will work forty hours of work per week on average, from 1:00 PM to 10:00PM.

30.     An addendum to the H-2B application states that work times may vary, but that the variability is not expected to result in more than forty hours of work per week.

31.     Defendant successfully obtained an H-2B visa for Mr. Miranda Herrera to travel to the United States as their employee.

32.     Upon information and belief, in 2018, prior to starting employment and as a condition of his employment with Defendant, Defendant required Mr. Miranda Herrera to sign a labor contract. The contract states that Mr. Miranda Herrera would work an average of forty hours per week. The contract further states that Mr. Miranda Herrera would be paid a weekly flat rate with a per hour equivalence of the greater of the Colorado minimum wage or the prevailing wage.

33. The contract provides that in exchange for forty hours per week of work, Mr. Miranda Herrera would receive on average of $400 per week.

34. The contract also promised habitable housing and safe transportation for Mr. Miranda Herrera as he traveled throughout the United States.

35. In order to obtain Mr. Miranda Herrera's visa, Defendant provided this contract to the government of the United States.

36. Mr. Miranda Herrera was recruited to leave his family and come to the United States and relied upon Defendant's promises and representations as embodied in their employment agreement that he would be properly compensated in accordance with United States laws.

37. In this contract, Defendant made materially false and misleading statements about Mr. Miranda Herrera's pay rate, and the hours he would work, to Mr. Miranda Herrera and the government of the United States for the purpose of securing his visa.

38. Defendant never intended to comply with their contractual obligations and in fact did not comply.

### Mr. Miranda Herrera's Work for Defendant in the United States

39. From March 25, 2018 through July 13, 2018, Defendant employed Mr. Miranda Herrera as a carnival worker in several states in the United States.

40. Mr. Miranda Herrera was employed in Colorado from on or about April 9, 2018, through July 12, 2018.

41. Mr. Miranda Herrera's role required him to set up and take down carnival games and rides, work as a ride operator, serve food, collect tickets, and engage in all other tasks asked of him necessary to run a carnival.

42. During his time working for the carnival, Mr. Miranda Herrera worked for Defendant approximately ten to thirteen hours or more per day, seven days a week, with no days off.

43. The carnival traveled through numerous Colorado communities and workers set up, and took down the carnival in each new town.

44. On days when the carnival was taken down, Mr. Miranda Herrera would work a twenty-hour day from approximately nine o'clock in the morning until eight o'clock in the morning the following day with only a three-hour break.

**Defendant's Wage Violations**

45. Mr. Miranda received $375 per week for his work, regardless of the hours he worked or where the work took place.

46. Defendant claimed that $25.00 was deducted from Mr. Miranda's paycheck each week for taxes. However, in the first two months of his work, Mr. Miranda Herrera had not applied for or received a social security number.

47. Defendant did not—at any time—pay Mr. Miranda Herrera the wage contemplated under the contract but instead paid him the same lump-sum wage each week regardless of the hours that he worked.

48. Defendant never paid Mr. Miranda Herrera the contemplated 150 percent rate for overtime hours.

49. Defendant never paid Mr. Miranda Herrera the Colorado minimum wage.

50. Defendant never paid Mr. Miranda Herrera the federal minimum wage.

51. Defendant never paid Mr. Miranda Herrera the prevailing wage for workers in the entertainment industry throughout Colorado.

52. When the Defendant paid Mr. Miranda Herrera, Defendant intentionally failed to provide him with a wage statement that accurately listed the following: the dates of work covered by the payment; Plaintiff's name; Employer's names; Employer's address and telephone number; Plaintiff's hourly rate of pay; Plaintiff's overtime rate of pay; and the basis for computing Plaintiffs rate of pay.

53. Defendant did not keep accurate records of wages or of hours worked by Mr. Miranda Herrera.

### Defendant's Unlawful Deductions

54. Defendant stated in its contract to Mr. Miranda Herrera that all tools and equipment needed for the job would be provided at no cost to him.

55. In violation of its contract, Defendant required Mr. Miranda Herrera and other workers to purchase company uniforms, including two hats, a jacket, and a polo shirt, all with the Ring & Ring logo.

56. Mr. Miranda Herrera spent approximately $100, more than one-fourth of his weekly paycheck, or the equivalent of two days of work, on uniforms.

57. Defendant required that Mr. Miranda Herrera always wear a clean uniform. If he arrived to work in a dirty uniform, he was required to purchase a new one, which would be deducted from his pay.  However, workers had to take their clothes to a laundromat and pay out of pocket in order to clean them, and Defendant would only transport them to a laundromat once a week.  If there was too much work they would not be taken at all.

### Defendant's Housing Violations

58. During this employment, Mr. Miranda Herrera was housed in a trailer, with fifteen other employees, which was transported with the carnival as it traveled.

59. Upon information and belief, the trailer was obtained, controlled and provided by Defendant for the purposes of housing Mr. Miranda Herrera and other H-2B workers for the duration of their 2018 contracts.

60. Mr. Miranda Herrera had insufficient space in the one-bedroom trailer. The sixteen employees all slept in bunk beds in a single room.

61. The trailer did not have any heating, fans, or cooling system despite the range of extreme temperatures that Mr. Miranda Herrera worked under between April and July.

62. The trailer was infested with bugs.

63. The floor of the trailer was rotting and had holes in it.

64. The trailer did not come equipped with cooking supplies or appliances, and there was no place to cook or store food.

65. Mr. Miranda Herrera purchased water for drinking, and cooking.

66. Water for bathing was obtained from a hose connected to the public water supply. Sometimes, his employers had problems connecting the trailers to a water supply and workers were unable to clean themselves for two to three days at a time.

67. Mr. Miranda Herrera and other workers spent their own money to purchase pesticides, cooking supplies, a lamp, a refrigerator, a portable stove, a portable window fan, and a space heater so that they would be able to cook and live in the trailers for the seven months of their contracts. Neither Mr. Miranda Herrera nor the other workers were reimbursed for those expenses.

68. The trailers did not have electricity and the portable appliances only functioned when they were connected to a generator.

69. The workers used the same generators to obtain electricity in their trailers that were used to operate the carnival games. Therefore, workers only had electricity when there were sufficient generators and the carnival was not operating. This meant perishables would be left unrefrigerated for hours when the carnival was operating or when they were traveling to the next location.

70. There were usually only four portable toilets for seventy carnival workers.

71. Housing provided by an H-2B employer to temporary seasonal employees is required to comply with safety and health standards under the Occupational Safety and Health Act (OSHA) at 29 C.F.R. § 1910.142.

72. The housing provided by Defendant to Mr. Miranda Herrera was not habitable and failed to comply with applicable OSHA standards.

**Defendant's Forced Labor Violations**

73. Defendant, through its supervising managers, forced Mr. Miranda Herrera to work eighty to ninety hours a week, while in a state of exhaustion, without compensating him for these hours worked.

74. Defendant knew that Mr. Miranda Herrera did not speak English.

75. Defendant knew that Mr. Miranda Herrera had no family or community in the United States and could not drive.

76. Defendant knew that Mr. Miranda Herrera had limited or no understanding of the legal system and labor laws in the United States.

77. Defendant knew Mr. Miranda Herrera depended on the carnival supervisors entirely for his home, his wages, and his community.

78. Mr. Miranda Herrera was told by veteran workers that if workers fled or complained they would be "blacklisted" or refused future employment or visas as retaliation.

79. Defendant employed four managers, at least one who used implicit threats, to keep the workers in a state of fear.

80. While Mr. Miranda Herrera and the others worked, one manager, John, walked and drove a golf cart throughout the carnival while carrying a firearm.

81. Upon information and belief, the armed manager, John, was a former marine.

82. John would threateningly point at and photograph Mr. Miranda Herrera and the other workers while they were on break.

83. Mr. Miranda Herrera complained about manager John and the working conditions to another manager and said that he wanted to leave, requesting his pay so that he could return home. In turn, he was told that he could leave, and was easily replaceable with other Mexican workers, but that he would not be paid.

84. As a direct and proximate cause of the managers' actions, Mr. Miranda Herrera's lack of community, the carnival's constant relocation, Mr. Miranda Herrera's lack of transportation, and Mr. Miranda Herrera's reliance on Defendant for his lodging, livelihood and travel home, Mr. Miranda Herrera had no option but to continue working for Defendant.

**Mr. Miranda Herrera's Escape**

85. Mr. Miranda Herrera escaped his employment with Defendant in July of 2018.

86. In July 2018, Mr. Miranda Herrera remembered a pamphlet given to him by the Department of State. The pamphlet contained the National Human Trafficking Hotline number, which Mr. Miranda Herrera called.

87. After learning about some of his rights and protections, Mr. Miranda Herrera awoke early on July 14, 2018 and escaped from the carnival, located at the time in Gunnison, Colorado.

88. Prior to Mr. Miranda Herrera's escape, he hinted to a more friendly manager that due to the long work hours, low pay and poor conditions he might leave.

89. During that conversation, the manager informed Mr. Miranda Herrera that if he reported the conditions, he could be arrested and incarcerated.

90. Thus Mr. Miranda Herrera was fearful of leaving during working hours or to notify his boss of his departure and left early in the morning.

## FIRST CLAIM FOR RELIEF

### VIOLATION OF THE MINIMUM WAGE PROVISION OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 206, *et seq.*

91. Mr. Miranda Herrera realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

92. This claim arises under the FLSA, 29 U.S.C. § 201, et seq., against Defendant.

93. At all times relevant to this action Defendant had two or more employees engaged in interstate commerce.

94. On information and belief, although Defendant hires seasonal workers, it operates its carnival twelve months out of the year.

95. Mr. Miranda Herrera was employed by Defendant to set up and take down carnival games and rides, work as a ride operator, serve food, collect tickets, and engage in other tasks necessary to operate a traveling carnival.

96. Defendant failed to pay Mr. Miranda Herrera the required minimum wage for his work, in violation of the FLSA, 29 U.S.C. § 206 *et seq.,* and its implementing regulations, giving rise to a private cause of action under 29 U.S.C. § 216.

97. Defendant's violations of the FLSA were willful in that Defendant knew or showed reckless disregard for whether Defendant's conduct was prohibited by the FLSA.

98. As a result, Mr. Miranda Herrera suffered damages.

## **SECOND CLAIM FOR RELIEF**

### **VIOLATION OF THE OVERTIME PROVISIONS OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 207,** *et seq.*

99. Mr. Miranda Herrera realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

100. At all times relevant to this action, Mr. Miranda Herrera was an employee of the Defendant within the meaning of 29 U.S.C. § 203(e)(1).

101. At all times relevant to this action, the Defendant employed Mr. Miranda Herrera within the meaning of 29 U.S.C. § 203(g).

102. Defendant failed to maintain records related to the wages, hours, and other conditions of employment in which Mr. Miranda Herrera worked.

103. Defendant failed to pay Mr. Miranda Herrera overtime for his work. Defendant violated 29 U.S.C. § 207 by failing to pay Mr. Miranda Herrera time-and-a-half his regular rate of pay for each hour worked in excess of forty hours per week, giving rise to a private cause of action under 29 U.S.C. § 216.

104. Defendant's violations of the FLSA were willful in that Defendant knew or showed reckless disregard for whether Defendant's conduct was prohibited by the FLSA.

105. Mr. Miranda Herrera is entitled to recover from Defendant his unpaid overtime wages, plus an equal amount as liquidated damages and costs of the action, pursuant to 29 U.S.C. § 216(b).

## THIRD CLAIM FOR RELIEF

### VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT
### 18 U.S.C. §1589

106. Mr. Miranda Herrera realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

107. This claim arises under 18 U.S.C.§ 1589.

108. Defendant obtained the labor or services of Mr. Miranda Herrera in violation of 18 U.S.C. § 1589 by:

   a. means of threats of force, through a supervisor carrying a gun and otherwise intimidating workers in violation of 18 U.S.C. § 1589(a)(1) and §1589(a)(2); and

   b. means of threatened abuse of law or legal process, through blacklisting employees that complain and informing Mr. Miranda that he could go to jail for reporting the company's abuses, in violation of 18 U.S.C. § 1589(a)(3); and

   c. knowingly benefiting financially from participating in a venture which engaged in obtaining labor through means of threats of force and abuse of the legal process, in violation of 18 U.S.C. § 1589(b).

109. Mr. Miranda Herrera brings these claims pursuant to the civil remedy provision for victims found at 18 U.S.C. § 1595.

110. As a result of Defendant's actions, Mr. Miranda Herrera suffered damages.

## FOURTH CLAIM FOR RELIEF

### VIOLATION OF COLORADO WAGE ACT, COLO. REV STAT. § 8-4-101, *et seq.*

111. Mr. Miranda Herrera realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

112. This claim arises under Colo. Rev. Stat. § 8-4-101 *et seq*.

113. Defendant did not pay all wages or compensation due and owing to Mr. Miranda Herrera in accordance with Colo. Rev. Stat. § 8-4-109.

114. Defendant did not maintain proper records or provide Mr. Miranda Herrera with an itemized pay statement in writing as required under Colo. Rev. Stat. § 8-4-103,

115. As a result, Mr. Miranda Herrera suffered damages.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF COLORADO MINIMUM WAGE OF WORKERS ACT, § 8-6-101, *et seq.*

116. Mr. Miranda Herrera realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

117. This claim arises under Colo. Rev. Stat. § 8-6-101 *et seq.* and 7 Colo. Code Regs §1103-1.

118. Defendant was required to pay Mr. Miranda Herrera at least the minimum wage in effect in Colorado for 2018 for work performed for Defendant.

119. Defendant did not pay Mr. Miranda Herrera the required $10.20 minimum wage in effect in Colorado for 2018 for any work performed.

120. Defendant's violations of the minimum wage laws in Colorado were willful.

121. As a result of Defendant's actions, Mr. Miranda Herrera suffered injuries.

122. Mr. Miranda Herrera is entitled to receive the wages and costs owed pursuant to Colo. Rev. Stat. § 8-6-118.

## SIXTH CLAIM FOR RELIEF

## BREACH OF CONTRACT

123. Mr. Miranda Herrera realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

124. Defendant and Mr. Miranda Herrera entered into a federal employment contract governing the terms of Mr. Miranda Herrera's employment with Defendant.

125. Mr. Miranda Herrera performed his obligations under this contract up until his escape.

126. Defendant breached this contract by failing to comply with the terms and conditions of Mr. Miranda Herrera's employment.

127. As a result, Mr. Miranda Herrera suffered damages.

## SEVENTH CLAIM FOR RELIEF

## UNJUST ENRICHMENT

128. Mr. Miranda Herrera realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

129. Defendant was unjustly enriched by its conduct.

130. Defendant refused to pay Mr. Miranda Herrera the full value of his wages.

131. Defendant knew or should have known that it was not entitled to retain Mr. Miranda Herrera's wages.

132. It is inequitable for Defendant to retain the substantial benefit it received by withholding wages owed to Mr. Miranda Herrera.

133. Equity requires that Defendant be disgorged of their unjust enrichment.

## DEMAND FOR JURY TRIAL

134. Mr. Miranda Herrera demands a jury for all issues so triable.

## PRAYER FOR RELIEF

135. Mr. Miranda Herrera respectfully requests that this Court enter an order:

   a. assuming jurisdiction of this case;

   b. declaring that Defendant violated the FLSA;

   c. granting judgment in favor of Mr. Miranda Herrera and awarding any unpaid wages and liquidated damages pursuant to the FLSA;

   d. declaring that Defendant violated the TVPRA;

   e. granting judgment in favor of Mr. Miranda Herrera and awarding damages, both actual and punitive, pursuant to the TVPRA;

   f. declaring that Defendant violated the Colorado Wage Act;

   g. granting judgment in favor of Mr. Miranda Herrera and awarding wages and penalties owed as a result of Defendant's violation of the Colorado Wage Act;

   h. declaring that Defendant violated the Colorado Minimum Wage of Workers Act;

   i. granting judgment in favor of Mr. Miranda Herrera and awarding wages and penalties owed as a result of Defendant's violation of the Colorado Minimum Wage Workers Act;

   j. declaring that Defendant breached its contract with Mr. Miranda Herrera;

k. granting judgment in favor of Mr. Miranda Herrera and awarding damages for Defendant's breach of contract;

l. declaring that Defendant was unjustly enriched by Mr. Miranda Herrera;

m. granting judgment in favor of Mr. Miranda Herrera and awarding damages for Defendant's unjust enrichment;

n. awarding Mr. Miranda Herrera's costs and attorney fees;

o. awarding Mr. Miranda Herrera prejudgment and post-judgment interest;

p. awarding other punitive and exemplary damages in an amount to be proven at trial;

q. awarding compensatory and special damages in an amount to be proven at trial; and

r. granting such other relief as this Court deems just and proper.

Respectfully submitted this 31st day of January, 2020

    *s/ Jocelyn K. Jenks*
Jocelyn K. Jenks
  *s/ Patricia Medige*
Patricia Medige

Colorado Legal Services
1905 Sherman Street, Suite 400
Denver, Colorado 80203
Telephone: (303) 837-2732
Fax: (303) 830-7860
jjenks@colegalserv.org
pmedige@colegalserv.org

*Attorneys for Plaintiff Gonzalo Miranda Herrera*